UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CIVIL ACTION NO. 06-129-JBC**

**BOB ARNOLD, as Administrator of the**
**Estate of Gerald Lynn Cornett, Deceased,**                                          **PLAINTIFF,**

**V.**                        **MEMORANDUM OPINION AND ORDER**

**LEXINGTON-FAYETTE URBAN COUNTY**
**GOVERNMENT, et al.,**                                                                **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion of the defendants, Lexington-Fayette Urban County Government ("LFUCG"), Ron Bishop, Anthony Estep, Ronald Gaunce, Kenneth Isaacs, Maria Jones, Kristine LaFoe, Clarence McCoy, and Robert Williams (collectively, "government defendants"), for summary judgment against the plaintiff Doris Arnold,[1] as administrator of the estate of Gerald Cornett, deceased (DE 61); the motion of the defendants, Correctional Medical Services, Inc. ("CMS"), and Patty Hatton (collectively, "CMS defendants"), for partial summary judgment against the plaintiff (DE 72); the motions of the government and CMS defendants for summary judgment against the intervening plaintiff, Kentucky Medical Services Foundation, Inc. ("KMSF") (DE 70); and the motion of the government defendants to bifurcate the trial (DE 66).

---

[1] Due to the death of Bob Arnold on March 2, 2008, Doris Arnold, who is successor administrator of the estate of Gerald Cornett, was substituted as the plaintiff on June 5, 2008.

**I. Factual Background**

The plaintiff's decedent, Gerald Cornett, was arrested on August 14, 2005, on charges of alcohol intoxication, and taken to the Fayette County Detention Center ("FCDC"). The defendant LFUCG operates FCDC, and the defendant CMS, pursuant to a contract with LFUCG, provides medical care for FCDC inmates. FCDC officers who were working on August 14 and 15, 2005, included the following defendants: Lieutenant LaFoe, Sergeant Estep, Corporal Isaacs, Corporal Gaunce, Corporal Jones (now Gaines), Corporal McCoy, and Corporal Williams. Defendant Patty Hatton was the CMS nurse who provided medical care for Cornett at FCDC.

Upon arrival at FCDC, Cornett had a 0.339 blood alcohol level. While in the intake area, Cornett fell and hit his head on the wall and then fell to the floor. Corporal Isaacs placed Cornett in holding cell P-7 at approximately 1:15 a.m. Stephanie Mogan and Brian Keith Rice were detained in the intake area of FCDC during the relevant time period. According to Mogan,[2] Cornett requested medical treatment and continually asked if he should be seen by medical staff, and yet he was not evaluated by a nurse during his time in the intake area. According to Rice,

---

[2] In their reply, the government defendants attempt to brush aside the factual issues created by the plaintiff by arguing that Mogan's affidavit is inadmissible hearsay for purposes of trial. Rule 56 of the Federal Rules of Civil Procedure anticipates fighting motions for summary judgment with affidavits that set forth facts that would be admissible in evidence. The content of the affidavit is admissible as far as Stephanie Mogan would be testifying at trial as to her personal knowledge of what she saw and heard occur during the relevant time period.

2

Cornett was knocked unconscious by his fall but was not seen by medical staff afterward. Mogan also stated that although Cornett was in cell P-7 for approximately two-and-a-half hours, no one even looked through the windows to check on him.

Corporal McCoy entered Cornett's cell at approximately 2:40 a.m. and found Cornett on his back, with his eyes closed, and saw that he had urinated on himself. Lieutenant Lafoe was notified, and she initiated an emergency medical code. Hatton and another nurse responded to the code and found Cornett unresponsive. At approximately 3:13 a.m., Cornett was taken to the University of Kentucky Medical Center ("UKMC"), where he had surgery for a sub-dural hematoma and subsequently died on August 20, 2005.

The plaintiff alleges that Cornett was not properly medically monitored or provided with adequate medical care at FCDC. The complaint states claims under 42 U.S.C. § 1983 for violations of Cornett's Eighth Amendment and Fourteenth Amendment rights, and under state laws for negligence and intentional infliction of emotional distress.

## II. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party can satisfy its burden by demonstrating an absence of evidence to support the non-movant's

case. *Id*. at 324-25. To survive summary judgment, the non-movant must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The non-movant must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. P. 56(e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Government Defendants' Motion for Summary Judgment Against the Plaintiff

The plaintiff argues that the government defendants are not entitled to judgment as a matter of law on the § 1983 claims against the individually named defendants in their individual capacities,[3] and the state law claims against the individually-named defendants and against LFUCG.

### A. Section 1983 Claims Against the Individual Government Defendants

The government defendants in their individual capacities argue that they are entitled to qualified immunity on the plaintiff's § 1983 claims. The doctrine of qualified immunity states that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their

---

[3] The plaintiff, having no objection to FCDC's policies and procedures, concedes that LFUCG is entitled to summary judgment on the plaintiff's § 1983 claims. Therefore, the court will grant summary judgment for LFUCG on the plaintiff's § 1983 claims, including the claims against the government defendants in their official capacities. Additionally, the plaintiff does not object to the dismissal of defendant Ron Bishop, and thus the court will dismiss all claims against him.

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When a court rules upon the qualified immunity issue, it must first determine whether the facts alleged show that the officer's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the court finds that a constitutional violation could properly be made out from the parties' submissions, the next step is to ask whether the right was clearly established.  *Id.*

    1.  Whether there was a constitutional violation

The issue of whether the government defendants' conduct amounted to a constitutional violation is governed by the Eighth Amendment.  A pretrial detainee, such as Cornett, has "a right under the Fourteenth Amendment to adequate medical treatment, a right that is analogous to the right of prisoners under the Eighth Amendment."  *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311, 313 (6th Cir. 2005).[4]  In order to state a cognizable claim under the Eighth Amendment, a pretrial detainee must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs.  *Estelle v. Gamble*,

---

[4] The defendants argue that to the extent the plaintiff alleges a substantive due process claim, that claim is governed by the Eighth Amendment analysis.  The plaintiff responds by stating that there are genuine issues of material fact that prevent granting summary judgment on the substantive due process claim.  The plaintiff did not express grounds for a substantive due process claim other than the claims for violations of 42 U.S.C. § 1983.  Thus, the court analyzes any substantive due process claim as part of the plaintiff's Fourteenth Amendment claim for violations of due process, which is analyzed according to the framework of the Eighth Amendment.

5

429 U.S. 97, 106 (1976); *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001).

Deliberate indifference may be manifested by a medical professional's failure to respond to a detainee's needs or by a prison official "intentionally denying or delaying access to medical care . . . ." *Id.* at 104-05. The analysis is both objective (i.e., the inmate must show that the alleged deprivation of medical care is "sufficiently serious") and subjective (i.e., the inmate must prove that prison officials had a "sufficiently culpable state of mind"). *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994))*.* The level of culpability a plaintiff must show is more than mere negligence; rather, the standard for deliberate indifference is synonymous with criminal recklessness. *Farmer*, 511 U.S. at 839-40; *Weaver v. Shadoan,* 340 F.3d 398, 410 (6th Cir. 2003). An "official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. If the defendants acted with deliberate indifference to Cornett's medical needs then they violated his constitutional rights and are not shielded from liability.

      a. Objectively serious medical need

Cornett's blood-alcohol level was arguably a serious condition by itself, but he needed medical care under any standard, according to the plaintiff, after he fell and hit his head. The plaintiff alleges that he did not receive any medical attention

6

after his fall. Cornett died five days later after surgery on a sub-dural hematoma that was, according to the plaintiff, due to the head wound he suffered at the jail. Thus, accepting the plaintiff's allegations as true, there is a genuine issue of material fact regarding the objective severity of Cornett's medical needs and the defendants' failure to provide adequate medical treatment.

### b. Subjectively culpable state of mind

The plaintiff claims that the individually named defendants acted with deliberate indifference to his right to medical treatment because they failed to properly assess his medical condition as part of the initial decision to accept him into the jail, they did not properly assess his medical condition after he fell, and they failed to properly monitor him after the fall. According to the plaintiff's witnesses Rice and Mogan, the defendants did not have Cornett seen by medical personnel even though they were objectively and subjectively aware of the substantial risk of harm to Cornett due to both his level of intoxication and also his fall.

The plaintiff argues that each officer knew or should have known that Cornett was dangerously intoxicated and that almost all of the officers knew about his fall. The plaintiff asserts that the officers knew of the substantial risk to Cornett and did not seek medical treatment for him, and that they failed to report necessary medical information to UKMC. Viewing the facts in the light most favorable to the plaintiff, there is a genuine dispute as to whether the individual

defendants acted with deliberate indifference toward Cornett and thus violated his constitutional right to medical treatment for a serious medical need.

    2.  <u>Whether the right was clearly established</u>

Cornett's constitutional right to medical treatment for a serious medical need was clearly established at all times relevant to this action. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 311, 313 (6th Cir. 2005) (stating that the right has been established since at least 1987). The government defendants agree that prison officials are required by the Due Process Clause to provide adequate medical treatment to pretrial detainees in accordance with the requirements of the Eighth Amendment. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Cornett's right to adequate medical care was established, and, viewing the facts in the light most favorable to the plaintiff, the officers would have reasonably known that their actions or inactions were unlawful. Thus, Cornett's right to medical care was clearly established at the time his rights were allegedly violated by the defendants.

Therefore, there is a genuine issue of material fact as to whether the individual officers' conduct violated Cornett's clearly established constitutional rights under the Eighth Amendment analysis as applied through his Fourteenth Amendment rights, and the court will not grant summary judgment for the individual government defendants in their individual capacities.

**B.  State Law Claims**

The plaintiff alleges state law claims against the individual government defendants and LFUCG for negligence, gross negligence, and intentional infliction of emotional distress.

    1.  Individual Defendants

The individual government defendants claim qualified immunity under Kentucky law on the plaintiff's tort claims against them in their individual capacities.  "Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions . . . ; (2) in good faith; and (3) within the scope of the employee's authority."  *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)*.*  Discretionary acts involve "the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . . ."  *Id.*  Ministerial acts are those requiring "only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts."  *Id.*

The parties dispute whether the defendants' alleged failure to ensure that Cornett received proper medical care is a discretionary or ministerial act.  The plaintiff argues that the actions and inactions of the individual government defendants were ministerial and thus qualified immunity does not apply.  The facts vary as to what actions were actually taken by the officers, but according to the

plaintiff, the officers at FCDC had fixed duties. Assuming, for the purpose of moving to the second element of the analysis, that the officers were performing discretionary functions,[5] the plaintiff also argues that the officers acted in bad faith. Evidence of deliberate indifference may be sufficient to show bad faith. *See Rowan County v. Sloas*, 201 S.W.3d 469, 485 (Ky. 2006) (finding there was no evidence of bad faith where there was no "implication of self-interest, or a deliberate indifference, or sinister motive"). If Mogan and Rice's testimony is true then the defendants may be found to have behaved with deliberate indifference and thus with criminal recklessness in their failure to provide medical treatment according to a reasonable standard of care. This creates a genuine dispute as to a material fact in determining whether the defendants are entitled to qualified immunity. Therefore, the court will not grant summary judgment for the individual defendants on the state law claims.

### 2. LFUCG

Kentucky's law of sovereign immunity bars state-law actions against county governments unless that immunity is waived. *See Lexington-Fayette Urban County Government v. Smolcic*, 142 S.W.3d 128, 133-34 (Ky. 2004); *Schwindel v. Meade*

---

[5] The court notes that some of the officers' duties may be considered discretionary, while other conduct could be considered ministerial. There are unresolved factual disputes that have a bearing on whether the officers' relevant actions were ministerial or discretionary.

*County*, 113 S.W.3d 159, 163 (Ky. 2003).[6] "Under Kentucky law, counties are treated markedly different from other local government units . . . due to a county's unique status under the Kentucky Constitution." *Smolcic*, 142 S.W.3d at 133. Additionally, an "urban county form of government is a new classification of *county government*." *Id.* at 131 (emphasis in original). Thus, LFUCG is treated as a county government for the purposes of sovereign immunity. *See Id.* at 131-33. In order to determine whether the plaintiff's state law claims against LFUCG are barred, the court must determine whether the Kentucky legislature has expressly waived the sovereign immunity of counties for those claims. *See e.g.*, *Tiller v. Univ. of Ky.*, 55 S.W.3d 846, 850 (Ky. Ct. App. 2001); *see also Withers v. University of Kentucky*, 939 S.W.2d 340, 346 (Ky. 1997).

The plaintiff asserts that the Claims Against Local Government Act ("CALGA"), KRS 65.200 *et seq.*, waives the urban county's immunity. However, the statute does not waive any immunity but instead specifies what damages can be recovered against local governments that do not have sovereign immunity. *See Schwindel*, 113 S.W. 3d at 163-64. "Counties" are not included in the definition of a local government. *Id.* (applying CALGA and holding that "a county enjoys sovereign immunity and cannot be held vicariously liable for the torts of its

---

[6] This immunity extends to suits against a county for acts committed by its employees, for "[i]f damages could be recovered against a county on the basis of respondeat superior, the concept of sovereign immunity would be largely nullified because state and county governments perform their ministerial functions by and through their agents, servants, and employees." *Schwindel*, 113 S.W.3d at 163.

11

employees"). The statute specifically provides that it is not to be construed to "eliminate or abrogate the defense of governmental immunity for county governments." KRS 65.2001(2). Therefore, LFUCG has sovereign immunity, and is entitled to summary judgment on the plaintiff's state law claims.

**IV. CMS Defendants' Motion for Partial Summary Judgment**

The CMS defendants seek summary judgment on the plaintiff's § 1983 claims arising out of the medical care rendered to Cornett by CMS employee Patty Hatton.[7] The constitutional standards for deliberate indifference have already been addressed in Part III.A of this opinion.

The plaintiff claims there is a genuine dispute over whether Hatton acted with deliberate indifference toward Cornett's serious medical needs. The plaintiff contends that Cornett was not medically assessed prior to being admitted to FCDC; that he was not evaluated by medical staff after his fall at FCDC; and that Cornett was bleeding after his fall. Even assuming that Hatton evaluated him after his fall, she could be found to be subjectively aware of his serious medical needs after seeing that his head was bleeding. It is also disputed whether Hatton performed a neurological assessment, which the plaintiff argues should be performed after someone falls and hits their head. Additionally, according to the forms completed by Hatton, Cornett should have been housed in the medical facility at the jail rather

---

[7] The plaintiff does not object to the dismissal of the § 1983 claims against CMS. Therefore, the court will grant summary judgment for CMS on the § 1983 claims.

than placed in the general population.  Hatton also failed to include on the form sent with Cornett to the hospital that he had fallen and struck his head.  The plaintiff argues that each of these actions or inactions constituted deliberate indifference to a known medical need.

The court will not weigh the credibility of the witnesses and finds that the plaintiff has presented sufficient evidence to create factual disputes.  Therefore, viewing the facts in the light most favorable to the plaintiff, there are genuine issues of material fact and the court will not grant summary judgment for Patty Hatton.

**V.  Motions for Summary Judgment Against Kentucky Medical Services Foundation, Inc.**

The government and CMS defendants seek summary judgment against Kentucky Medical Services Foundation, Inc. ("KMSF").  KMSF provides billing services for the physicians who practice at the University of Kentucky Medical Center ("UKMC").  The UKMC physicians assign to KMSF their right to collect charges for medical services.  KMSF asserts that the defendants are liable to KMSF for the charges related to physicians' services provided to Cornett prior to his death at UKMC because the defendants' acts or omissions made the services necessary.

KMSF argues that it has a subrogation claim against the defendants.  The doctrine of equitable subrogation "allows a party under a legal obligation to satisfy the debt of another and acquire the rights of the creditor against the debtor."  *Wine*

*v. Globe American Cas. Co.*, 917 S.W.2d 558, 561 (Ky. 1996) (finding that subrogation is "designed to prevent unjust enrichment by requiring those who benefited from another paying their debt to ultimately pay it themselves"). A party is entitled to subrogation if the following elements are met: (1) payment by one of a debt of another; (2) subrogee is not a volunteer; (3) the debt is not one for which the subrogee is primarily liable; (4) the entire debt must be paid unless the others who made payment are joined; and (5) subrogation must not work any injustice to the rights of others. *Id.* (quoting *Bryan v. Henderson Elec. Co.*, 566 S.W.2d 823, 825 (Ky. 1978)).

The defendants argue that KMSF is not entitled to subrogation because it has not paid any debt owed by Cornett. KMSF pays the physicians a salary and asserts that the payment is in exchange for performance of their medical services and for assignment of clinical income to KMSF. This salary is, according to KMSF, a payment of the debt that is owed to each doctor who performed services for their patients, meaning that KMSF has effectively paid Cornett's debt for the services he received. The defendants argue that KMSF was not legally obligated to satisfy the debts of Cornett's estate and that it did not pay the debt. To meet the elements for subrogation, the party must have paid the debt on behalf of the debtor and must have done so due to an obligation, neither of which occurred in this situation. Thus, KMSF cannot succeed on a subrogation claim.

Alternatively, KMSF argues that it would be inequitable to allow the

government defendants to escape liability for the costs of the medical treatments if they were liable for Cornett's injuries. However, KMSF's argument is based on cases addressing the insurance context. *See, e.g., National Sur. Corp. v. Hartford Cas. Ins. Co.*, 493 F.3d 752, 756 (6th Cir. 2007). KMSF is not acting as an insurer of uncollected charges on behalf of the physicians at UKMC by paying them a salary, and this case is not otherwise analogous to the insurance context. KMSF additionally argues that the defendants should not be permitted to escape liability for the medical treatments if they are found liable for Cornett's injuries. If the defendants are found liable to the plaintiff for his injuries and medical expenses, they would not be additionally liable to the intervening plaintiff for the same medical expenses. Thus, KMSF does not have a direct action against the defendants.

KMSF is not a subrogee and does not have a direct cause of action against the defendants. Therefore, the government and CMS defendants are entitled to summary judgment on the claims of the intervening plaintiff KMSF.

**VI. Conclusion**

**IT IS ORDERED** that the government defendants' motion for summary judgment (DE 61) is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** to the extent that the plaintiff's § 1983 claims and state law claims against LFUCG, the government defendants in their official capacities, and Ron Bishop are **DISMISSED**. It is otherwise **DENIED** due to genuine issues of material fact, and the

15

plaintiff may proceed against the government defendants in their individual capacities under the § 1983 and state law claims.

**IT IS FURTHER ORDERED** that the government and CMS defendants' motions for summary judgment against the intervening plaintiff KMSF (DE 70, 118) are **GRANTED,** and KMSF's claims against the government and CMS defendants are **DISMISSED**.

**IT IS FURTHER ORDERED** that the CMS defendants' motion for partial summary judgment on the § 1983 claims (DE 72) is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** to the extent that the plaintiff's § 1983 claims against CMS are **DISMISSED**.  It is otherwise **DENIED** due to genuine issues of material fact, and the plaintiff may proceed against Patty Hatton on the § 1983 claims.

The plaintiff having conceded that defendant LFUCG is entitled to summary judgment on the § 1983 claims, and the court having granted summary judgment for LFUCG on the state law claims, **IT IS FURTHER ORDERED** that the government defendants' motion to bifurcate the claims against LFUCG (DE 66) is **DENIED AS MOOT**.

Signed on  June 17, 2008



JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY

16